## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| In re: BRAINTREE, LLC | § <br> § | No. _____ |

---

| | | |
|---|---|---|
| NIRP PASEDA, PLLC, and <br> NIRP SUGAR LAND, PLLC <br><br> VS. <br><br> MEDSTREAMING, LLC, <br> WAEL ELSEAIDY, and <br> RYAN PLASCH | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | From the United States District Court <br> Western District of Washington <br><br> NO. C17-01607-TSZ |

## NON-PARTY BRAINTREE, LLC'S
## OBJECTIONS TO SUBPOENA,
## MOTION TO QUASH SUBOENA, OR ALTERNATIVELY,
## MOTION FOR PROTECTIVE ORDER,

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, BRAINTREE, LLC, NON-PARTY herein and hereby files this its Objections to Subpoena, Motion to Quash, or Alternatively, Motion for Protective Order, and in support thereof, shows the following:

### A.
### BACKGROUND
### Proceeding in Washington

1.     Plaintiffs served upon Braintree, LLC, a Non-Party to this lawsuit its Notice to Produce Documents on December 17, 2018, followed by a Notice of

Intention for the Production of Documents and/or Tangible Items issued to produce documents on December 28, 2018.   The subpoena, which is attached hereto and labeled Exhibit A, is issued under the authority of the United States District Court for the Western District of Washington, in Civil Action No. C17-1607-TSZ, in a case between NIRP Pasadena, LLC, *et al.,* Plaintiffs, and Medstreaming, LLC, *et al.*, Defendants.   Braintree, LLC requests protection from producing documents pursuant to that subpoena.   The case from which this subpoena issues was originally brought by Plaintiffs NIRP Pasadena, LLC, and NIRP Sugar Land, PLLC (herein "NIRP"), against Medstreaming, LLC, Wael Elseaidy, and Ryan Plasch (herein "Medstreaming"), Defendants in the Superior Court of the State of Washington for the County of King, and assigned Cause No. 17-2-20623-7 SEA. Attached as Exhibit B is the Plaintiffs Complaint.   Attached as Exhibit C is the Defendants' answer.  The case was subsequently removed by the Defendants to the Western District of Washington.

2.     According to the pleadings between the parties, the case between NIRP and Medstreaming arises out of a contract, specifically a Software License Agreement Terms and Conditions, a written Proposal for Endovascular Data Management system, and a financial arrangement through Balboa Capital, LLC (the

"Agreements"). [1] NIRP provides interventional radiology medical services to patients, which services can be used to allow for minimally invasive surgical techniques. The procedures used by NIRP require software to integrate various record and billing systems, including particular electronic medical records (EMR), PACS (or picture archiving and communication systems) integration, vascular information systems, and clinical data management. This integration software is known as workflow applications software. [2]

3.    Medstreaming is a company that develops, markets, sells, installs, and supports workflow applications software to medical providers such as NIRP. [3]

4.    The lawsuit between NIRP and Medstreaming relates to the workflow applications software that NIRP acquired from Medstreaming. It involves claims based upon the representations of, as well as software demonstration by, representatives of Medstreaming. [4] NIRP alleges that these representations, demonstrations, and descriptions as to the abilities and functionality of Medstreaming's workflow applications software were false. [5] However, based upon NIRP's reliance upon these false representations, demonstrations, and

---

[1] Exhibit B, ¶ 1.5.
[2] Exhibit B, ¶¶ 3.1, 3.2.
[3] Exhibit B, ¶ 3.3.
[4] Exhibit B, ¶¶ 3.4, 3.5, 3.6, 3.7, 3.8, 3.9, 3.10.
[5] Exhibit B, ¶¶ 3.7.

descriptions, NIRP purchased the workflow applications software from Medstreaming and signed the various Agreements.[6]

5.    NIRP also alleges that Medstreaming breached its Agreements in failing to deliver, install, and "go live" with the workflow applications software within thirty dates of access to NIRP's server.[7] Medstreaming is alleged to have failed to comply with these promises, and to have breached several specific provisions of its Agreement with NIRP.[8]

6.    Moreover, the workflow applications software is alleged to have failed to perform its most basic functions.  The various alleged failures of the workflow applications software designed by Medstreaming are described in detail by NIRP.[9]

7.    NIRP accuses Medstreaming of fraud.[10]

8.    NIRP also alleges that Medstreaming and the financing company it associates itself with—Balboa Capital, LLC—are involved in an unfair, deceptive, and oppressive financial scheme.[11]

9.    Despite repeated demands to cure and notices of default, NIRP alleges that Medstreaming was unable to repair or cure the gross deficiencies of its workflow

---

[6] Exhibit B, ¶ 3.11,
[7] Exhibit B, ¶¶ 3.11, 3.12, 3.13, 3.14, 3.15, 3.16.
[8] Exhibit B, ¶¶ 3.24, 3.25.
[9] Exhibit B, ¶¶ 3.16, 3.17, 3.18, 3.19, 3.20, 3.21, 3.22, 3.23.
[10] Exhibit B, ¶¶ 3.26, 3.27, 3.28, 3.29, 3.30.
[11] Exhibit B, ¶ 3.31.

applications software. [12] Ultimately, Medstreaming cut off NIRP's access to workflow applications software entirely.[13]

10.     Based upon these alleged facts, NIRP asserts seven causes of action against Medstreaming: (1) Recovery of License Payments, [14] (2) Breach of Contract (Revocation or Rejection), [15] (3) Breach of Contract (Breach of Express Warranty), [16] Breach of Contract (Breach of Implied Warranties), [17] Fraudulent Inducement,[18] Consumer Protection Act Violations,[19] and Negligent Participating Liability. [20] Medstreaming generally denies liability, and specifically denies a number of the allegations of NIRP, and assert a number of affirmative defenses to NIRP's claims.[21]

11.     The case was removed by Medstreaming to the Western District of Washington where it was assigned Cause No. NO. C17-01607-TSZ.

---

[12] Exhibit B, ¶¶ 3.32, 3.33, 3.34, 3.35,
[13] Exhibit B, ¶ 3.35.
[14] Exhibit B, ¶¶ 4.1—4.5.
[15] Exhibit B, ¶¶ 5.1—5.17.
[16] Exhibit B, ¶¶ 6.1—6.6.
[17] Exhibit B, ¶¶ 7.1—7.11.
[18] Exhibit B, ¶¶ 8.1—8.11.
[19] Exhibit B, ¶¶ 9.1—9.8.
[20] Exhibit B, ¶¶ 10.1—10.6.
[21] *See generally* Exhibit C.

## B.
## BACKGROUND
## Subpoena Against Braintree

12.     The attorney for Medstreaming issued a subpoena out of the United States District Court for the Western District of Washington in Civil Action No. C17-01607-TSZ.  It asks a non-party witness, Braintree, LLC, a Texas limited liability company (herein "Braintree"), to produce at 5430 Saratoga Blvd, Suite 26, Corpus Christi, Texas 78413, the following:[22]

> 1. All Documents and Communications Concerning any services you were asked to provide, previously provided, and/or are currently providing to or for NIRP, including but not limited to:
>
>    a. All contracts and agreements (including drafts) between you and NIRP;
>
>    b. All invoices sent to NIRP;
>
>    c. All payments received from NIRP; and
>
>    d. All Communications between you and NIRP regarding your product and services rendered or to be rendered.

13.     Pursuant to FED. R. CIV. P. 45(d)(2)(B), a person commanded to produce documents may serve on the party or attorney designated in the subpoena a written objection to inspecting or copying any or all of the materials or to producing electronically stored information in the form or forms requested.  The objection must be served before the earlier of the time specified for compliance or 14 days

---

[22] *See* Exhibit A.

after the subpoena is served. The time for compliance is December 28, 2018, at 12:00 p.m. This objection is therefore timely.

14.     Moreover, FED. R. CIV. P. 45(d)(3) provides that the court for the district where compliance is required may quash a subpoena for a variety of reasons, including that such subpoena requires disclosure of privileged or other protected information, and subjects the person to an undue burden. FED. R. CIV. P. 45(d)(3)(A)(iii), (iv). Also, the court for the district where compliance is required may quash or modify a subpoena where the subpoena requires disclosing of a trade secret or other confidential research, development, or commercial information. FED. R. CIV. P. 45(d)(3)(B)(i). Finally, the court for the district where compliance is required may also attach conditions to any production. FED. R. CIV. P. 45(d)(3)(C).

15.     Braintree objects to producing any of the documents requested of it as a third-party with no interest in the dispute between NIRP and Medstreaming. The dispute between NIRP and Medstreaming clearly relates to Medstreaming's acts and/or omissions regarding its own workflow applications software. Braintree had nothing to do with Medstreaming's development, marketing, selling, installation, supporting, or efforts at curing its workflow applications software. Braintree has nothing to do with the contract between Medstreaming and NIRP. Braintree had nothing to do with the representations, demonstrations, or declarations of

Medstreaming personnel.  Consequently, the relationship between Braintree and NIRP and any communications between them is not relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Medstreaming cannot articulate how contracts between Braintree and NIRP are relevant to this case, or how invoices, payments, or how communications between NIRP and Braintree are relevant to the case.  *See* FED. R. CIV. P. 26(b).

16.     Braintree would further show that it is a direct competitor of Medstreaming. Braintree is in the business of developing, marketing, selling, installing, and supporting workflow applications software. Braintree objects to its direct competitor obtaining the contracts, communications, invoices, and payments, or any information between Braintree and NIRP, as it contains trade secret and highly confidential information which, if obtained by its direct competitor, could economically harm Braintree significantly.  Communications between NRIP and Braintree may also contain private health information or other sensitive commercial or personal information.  Given the irrelevant nature of the request, to provide such information to its competitor would have the potential greatly to harm

Braintree with no real grounds for Medstreaming's supposed need for such information.

17.     Even if Medstreaming could make a showing of relevance and overcome the trade secret and confidentiality aspects of the information it seeks from Braintree, Braintree (in the alternative) would need to have this Court severely restrict Medstreaming's access to that information through a confidentiality order that could be enforced through contempt, including containing an "attorney's eyes only" limitation on the documents produced.

18.     WHEREFORE, PREMISES CONSIDERED, Non-Party Braintree, LLC prays that this Court sustain its objections to the documents requested by Medstreaming in its subpoena, quash that subpoena, or, alternatively, restrict that subpoena to essential documents, and enter a protective or confidentiality order that would severely restrict its direct competitor from using the requested documents in any capacity, including ordering an "attorney's eyes" only restriction on any production.  Braintree further requests such other and further relief to which it may show itself justly entitled to receive.

Respectfully submitted,

**HARRIS & GREENWELL**
One Shoreline Plaza
800 N. Shoreline Blvd., Suite 2800-S
Corpus Christi, Texas 78401
Telephone:   (361) 883-1946
Facsimile:   (361) 882-2900
Email: agreenwell@harris-greenwell.com


By: _____
    Andrew M. Greenwell
    SBN: 00784170

**ATTORNEY FOR NON-PARTY
BRAINTREE, LLC**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify by my signature above that on this 28th day of December, 2018, a true and correct copy of the foregoing has been served on the following counsel of record under the Texas Rules of Civil Procedure by electronic filing.

Lawrence R. Cock, WSBA No. 20326
CABLE, LANGENBACH,
KINERK & BAUER, LLP
1000 Second Ave. Bldg., Suite 3500
Seattle, Washington 98104-1048

Lori Hood
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
1301 McKinney Street, Suite 3700
Houston, Texas 77010

Hozaifa Y. Cassubhai
SPRIO HARRISON
500 Union Street, Suite 800
Seattle, Washington  98101

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Western District of Washington

| | | |
|---|---|---|
| NIRP Pasadena PLLC et al. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   C17-01607-TSZ |
| Medstreaming LLC et al. | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:   Braintree LLC, Attn: Sunil P. Reddy (Registered Agent), 5430 Saratoga Blvd., #26, Corpus Christi, TX 78413

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

See Exhibit A for Definitions and items to produce - Party issuing the subpoena is amenable to receiving documents electronically

| Place: 5430 Saratoga Blvd., #26 Corpus Christi, TX 78413 | Date and Time: 12/28/2018 12:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

| CLERK OF COURT | | |
|---|---|---|
| _____ | OR | *Hozaifa Cassubhai* |
| Signature of Clerk or Deputy Clerk | | Attorney's signature |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
Medstreaming LLC, Wael Elsealdy, and Ryan Plasch_____ , who issues or requests this subpoena, are:
Hozaifa Cassubhai, Bailey Duquette P.C., 500 Union St., Ste. 800, Seattle, WA 98101, hozaifa@baileyduquette.com

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

**EXHIBIT A**

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. C17-01607-TSZ

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i) is a party or a party's officer; or
    (ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:
  (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*
  (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*
  (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    (i) fails to allow a reasonable time to comply;
    (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv) subjects a person to undue burden.
  (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    (i) disclosing a trade secret or other confidential research, development, or commercial information; or

    (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*
  (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    (i) expressly make the claim; and
    (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**Exhibit A**

<u>Definitions</u>:

1)     **"Braintree," "you,"** and/or **"your"** means Braintree LLC, a Texas limited liability company, including its officers, directors, and/or employees and agents.

2)     **"NIRP"** means National Interventional Radiology Partners, including its affiliate offices and entities (including without limitation NIRP Pasadena PLLC, NIRP Sugarland PLLC, NIRP Beaumont PLLC, NIRP Houston PLLC NIRP Katy PLLC), and its officers, directors, and/or employees and agents.

3)     **"Document"** is defined to be synonymous in meaning and equal in scope to the usage of this term in FRCP 34(a)(1) including, but not limited to, emails, text messages, electronic or computerized data compilations, databases, charts, voice recordings, video recordings, photographs, calendars, facsimiles, handwritten notes, and other information stored in either tangible or intangible form.  The definition specifically includes documents stored on personal computers, smartphones, personal digital assistants, portable USB "thumb" drives, CDs, DVDs, cloud services including but not limited to "Google Docs", Microsoft OneDrive, Dropbox, Amazon Web Services, etc., and other electronic storage media.

4)     **"Communication"** includes all oral or written transmittal of information (in the form of facts, ideas, inquiries, or otherwise) regardless of form (*e.g.*, emails, letters, notes, telephone conversations, text messages etc.), including, without limitation, all correspondence and conversations.

5)     **"Concerning"** means referring to, relating to, describing, evidencing, reflecting, constituting, documenting, or recording.

Please note that the below requests seek Documents and Communications in your possession, custody, or control, regardless of the capacity in which you came to possess or control the Documents or Communications.

<u>Please produce</u>:

1.  All Documents and Communications Concerning any services you were asked to provide, previously provided, and/or are currently providing to or for NIRP, including but not limited to:

    a.  All contracts and agreements (including drafts) between you and NIRP;

    b.  All invoices sent to NIRP;

    c.  All payments received from NIRP; and

    d.  All Communications between you and NIRP regarding your product and services rendered or to be rendered.

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

FOR THE COUNTY OF KING

| | |
|---|---|
| NIRP Pasadena, PLLC, and<br>NIRP Sugar Land, PLLC, | |
| Plaintiffs, | No. |
| vs. | **COMPLAINT** |
| MEDSTREAMING, LLC, a Washington<br>Limited Liability Company, Wael<br>Elseaidy, and Ryan Plasch, | |
| Defendants. | |

Plaintiffs, NIRP Pasadena, PLLC, and NIRP Sugar Land, PLLC, through their

attorneys of record, allege and state as follows.

## I. PARTIES

1.1     Plaintiffs, NIRP Pasadena, PLLC and NIRP Sugar Land, PLLC ("NIRP")

are Texas limited liability companies, doing business in Texas.

CABLE, LANGENBACH,
KINERK & BAUER, LLP
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

EXHIBIT B

1       1.2    Defendant Medstreaming, LLC ("Medstreaming") is a Washington limited

2    liability company. Medstreaming's principal place of business is in King County,

3    Washington.

4       1.3    Defendant Wael Elseaidy is the Chief Executive Officer of Medstreaming.

5    In his capacity as Chief Executive Officer, Mr. Elseaidy is a spokesperson for

6    Medstreaming and quoted in press releases and other Medstreaming promotional

7    materials. In his capacity as an officer, Mr. Elseaidy signed the license agreements

8    between plaintiffs and Medstreaming LLC.  Mr. Elseaidy is a resident of King County.

9

10      1.4    Defendant Ryan Plasch is a Vice President of Medstreaming. Mr. Plasch is

11    responsible for Medstreaming's Sales and Strategic Business Development and leads an

12    11-person Medstreaming sales and business development team. Mr. Plasch is a resident

13    of King County, Washington.

14      1.5    In 2016, Medstreaming proposed a contractual relationship which

15    included, without limitation, the sample and/or model demonstrated by Medstreaming

16    to Plaintiffs, a Software License Agreement Terms and Conditions, with attached

17    Exhibits, a written Proposal for Endovascular Data Management system and a financial

18    arrangement through Balboa Capital, LLC (collectively "Agreement").

19      1.6    Paragraph 5.3 of the Software License Agreement Terms and Conditions

20    provides that the state and federal courts of King County, Washington, shall have

21    exclusive jurisdiction over any disputes under this Agreement.

22

23            **II.  VENUE AND JURISDICTION**

24      2.1    This Court has personal jurisdiction over Defendants.

COMPLAINT - 2

CABLE, LANGENBACH,
KINERK & BAUER, LLP
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

2.2     This Court has subject matter jurisdiction as a court of general jurisdiction.

2.3     Venue is proper in King County as the underlying transaction arose in King County, Medstreaming is Washington limited liability company doing business in King County, Washington, and the parties consented in the Agreement to the exclusive jurisdiction and venue of courts in King County.

## III. FACTS

3.1     Plaintiffs provide interventional radiology medical services to patients. Interventional radiology is a medical specialty that utilizes image guidance to perform procedures within the human body through small holes, rather than through large incisions as in traditional surgery. Interventional radiology procedures are associated with less pain, lower complications and faster recovery times.  Interventional radiologists have the ability to reach every organ system in the body. The procedure is used to treat a variety of health issues including, peripheral arterial disease, vertebral compression fractures and pelvic congestion syndrome.

3.2     The procedure necessarily requires state of the art technology and training. A very vital component in the delivery of care via interventional radiology is utilizing technology in the form of software to integrate various record and billing systems, including particular electronic medical records (EMR), PACS integration, cardiovascular information systems, vascular information systems, and clinical data management.  This integration is typically known as workflow applications.  The treating physician needs to have all of a patient's information readily available in order to provide quality care to the patient.

COMPLAINT - 3

3.3   Medstreaming publicly holds itself as a company that develops, markets, sells, installs and supports specialty-based workflow applications software to medical providers for different medical specialties, including Cardiovascular, Vascular and Cardiology.

3.4   Medstreaming's website represents to potential customers that Medstreaming products are "quality products that benefit health care facilities and their patients by supplying them with high quality medical workflow tools." The website further represents that Medstreaming "will comply with all requirements and maintaining the effectiveness" of their "quality management system." Medstreaming's CEO, Wael Elseaidy, is quoted frequently in Medstreaming's press releases and Mr. Elseaidy makes representations about the attributes and functionality of Medstreaming's products. For example, on May 1, 2013, Mr. Elseaidy described Medstreaming's products as a "game changer in patient workflow" and on December 2, 2013, Mr. Elseaidy represented that Medstreaming's products had "revolutionary analytic capabilities" and would significantly enhance "the speed and quality of the workflow." On December 15, 2015, Mr. Elseaidy publicly proclaimed Medstreaming's EMR ecosystem (which was a component ultimately purchased by plaintiffs) as "revolutionary" and a "fundamental shift in productivity for the cardiovascular community."

3.5   In early February of 2016, Ryan Plasch, Medstreaming's Vice President of Sales and Business Development, advertised and promoted Medstreaming's product at the 28th International Symposium on Endovascular Therapy at the Diplomat Hotel in

COMPLAINT - 4

CABLE, LANGENBACH,
KINERK & BAUER, LLP
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

1    Hollywood, Florida. A NIRP physician, Dr. Andrew Martin, met Ryan Plasch at the

2    symposium between February 6-10, 2016 and spent roughly two hours with Mr. Plasch

3    over the course of the five-day meeting listening to Plasch's descriptions of the

4    capabilities of Medstreaming's software, and Maged Mikhail, Medstreaming's Vice

5    President of Product Development, demonstrated the software's functionality to Dr.

6    Martin during the symposium.  Plasch represented that the software was a tool which

7    would amplify the efficiency of the staff and allow NIRP to view and understand

8    information about the lab.  Plasch represented that the software had inventory tracking

9    capability. Mr. Plasch also represented that the software had the functionality to move

10   the date and generate maps and reports regarding physician referrals and procedures.

11

12         3.6     On or about February 16, 2016, Medstreaming demonstrated the software

13   for Plaintiffs at Plaintiffs' offices. The presentation was conducted by Joseph Mazzola,

14   Medstreaming's Southern U.S. Sales Manager.  As demonstrated, the software

15   functioned fully and Mazzola represented that it would meet Plaintiffs' integrated

16   workflow requirements, including PACS reporting, the information systems and

17   clinical data management.

18         3.7     During the demonstration, Medstreaming demonstrated and represented

19   that its product would perform autocoding of CPT codes, integrate seamlessly with

20   peripherals, and take the place of Plaintiffs' then computer system. Medstreaming

21   publicly proclaims that it developed the industry's first completely integrated "All in

22   One" platform application and Mr. Elseaidy, in a February 2014 press release, stated

23   that the "All in One clinical data management solution ... enables users to access and

24

COMPLAINT - 5

CABLE, LANGENBACH,
KINERK & BAUER, LLP
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

view data in ways that were never feasible in the past." (The product ultimately purchased by plaintiffs included "Medstreaming All in One OBL Cardiovascular Infomatics System"). During the demonstration, Medstreaming represented that its software would report nurse's notes, drug logs, and full reports of patient procedures, including angio procedures, would integrate with Plaintiffs' EMR reporting system, would integrate all billing and scheduling, and would allow all data and reports to be printed ("Services"). These promises were false.

3.8     In addition to conducting the February 16, 2016 presentation, Mr. Mazzola, Mr. Plasch and Mr. Mikhail had other interactions with Plaintiffs in which they represented to Plaintiffs that the software would provide solutions to all of the Plaintiffs' administrative software needs. These interactions included demonstrations and descriptions of the software on February 22, 2016 and March 7, 2016.

3.9     By demonstrating its alleged functionalities, Medstreaming, through Mr. Mazzola and others, represented that its software was fully functional, ready for installation and would provide the Services. Medstreaming assured Plaintiffs that its software would provide information templates for each medical procedure, including but not limited to, peripheral intervention, venous intervention, and dialysis access procedures. For each of Plaintiffs' interventional procedures performed on its patients, Medstreaming promised to provide templates to report the information. Those promises were false.

3.10     In conjunction with the Agreement, Medstreaming represented to Plaintiffs that its software would immediately export clinical data to Plaintiffs' EMR

COMPLAINT - 6

1   system, with attached ICD and CPT codes so that Plaintiffs could proceed with billing

2   on the same day as the procedure. Similarly, Mr. Elseaidy, in a press release, is quoted

3   as stating that images and data "will be pushed automatically from EMR to imaging

4   acquisition devices in one unified worklist solution." Those promises were false.

5          3.11    Based on the demonstrations, the Proposal and other documents and

6   representations of Medstreaming personnel, Plaintiffs purchased the software from

7   Medstreaming.

8          3.12    Medstreaming promised to "deliver and install the software at Customer's

9   facility."

10

11         3.13    Medstreaming assured Plaintiffs, prior to and as an inducement to enter

12   into the Agreement, that its software would be ready to perform ("go live") thirty days

13   after Plaintiffs gave Medstreaming access to Plaintiffs' server.

14         3.14    The software completely failed when Plaintiffs first attempted to use it

15   and thereafter. The software was not ready to go live, and was still in rudimentary

16   development stages.

17         3.15    Plaintiffs have spent several hundred labor hours interacting with

18   Medstreaming personnel in an attempt to get the software to perform as promised as

19   failures of the software directly affected patient care.

20

21         3.16    The E-prescription functions report doses of medication incompletely 50%

22   of the time.  The lab interface does not work and requires Plaintiffs, physicians, and

23   staff have to check multiple sources to receive and confirm lab results.

24

COMPLAINT - 7

CABLE, LANGENBACH,
KINERK & BAUER, LLP
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

3.17    The structured reporting for angiograms does not create the correct text. Plaintiffs, physicians, and staff must manually fix the report. This was marketed by Medstreaming as a time-saving feature, but Medstreaming's representations have proven to be false. The structure reporting for the ultrasound feature does not work. The data such as measurements and velocities do not cross over to the report as promised.

3.18    The vein treatment worksheet creates text with blanks which must be typed by hand.

3.19    The case documentation tools do not work. These must be revised manually on every single case. There are no "follow-up" tools. The report templates function at a 1980s level of word processing, not at a level consistent with commercially reasonable standards in 2016. The software spell check only functions after a report has been generated.

3.20    The voice recognition feature does not integrate. Plaintiffs, physicians, and staff use and need voice recognition to input information into the software. Medstreaming promised its software would perform that function. It does not.

3.21    Inventory documentation does not work as represented. Plaintiffs cannot actually manage inventory using the software. Plaintiffs have to manage inventory by hand using Google spreadsheets. Basic functions such as reports demonstrating what has been used and needs to be re-ordered and the existing stock level do not work at all. Case costing is not accurate because Medstreaming is inconsistent on how it

COMPLAINT - 8

1   calculates the cost of an item as opposed to a pack of items as opposed to a case of

2   items.

3        3.22    After purchasing the software, Plaintiffs had an extensive list of

4   dysfunctional items including videos it made to demonstrate failure of the software to

5   perform basic functions.  Many of the dysfunctional items were not fixed and were

6   relegated by the Medstreaming to the "that is in the next version" category.   Plaintiffs

7   spent hundreds of man-hours helping Medstreaming to develop the software so it

8   would function as promised. The product never worked as promised and represented.

9

10       3.23    The software failed to perform its most basic functions.

11       3.24    Medstreaming warranted that "the services provided hereunder shall be

12  performed in a professional and workmanlike manner by adequately trained and

13  experienced personnel. " Agreement, paragraph 3.2.

14       3.25    Medstreaming's services were not provided in a professional and

15  workmanlike manner by adequately trained and experienced personnel.

16       3.26    Medstreaming misrepresented the capabilities, the readiness, and the

17  implementation of its software and its personnel, as enumerated above.

18       3.27    Medstreaming knew its representations about the capabilities and the

19  timing of its software and its personnel, were false.

20       3.28    In the alternative, Medstreaming made the false assurances with reckless

21  indifference as to the truth.

22

23       3.29    Medstreaming made the misrepresentations enumerated above with the

24  intention that Plaintiffs would rely on them and Plaintiffs did rely on them.

COMPLAINT - 9

3.30    Medstreaming made the knowingly or recklessly false representations in order to induce reliance on the part of Plaintiffs, and to induce Plaintiffs to enter into the Agreement.

3.31    Plaintiffs justifiably relied on the misrepresentations of Medstreaming, such that Plaintiffs agreed to enter into the Agreement and enter into a Payment Agreement with Balboa. It was Medstreaming that introduced Plaintiffs to Balboa. Upon information and belief Balboa has a relationship with Medstreaming in which Balboa profits from the deceptive acts of Medstreaming. In exchange for introducing its customers to Balboa, Medstreaming gets paid up front for the cost of the License Agreement. Balboa in exchange requires Medstreaming customers to execute draconian contracts containing language which handcuff the customer to payments no matter what happens with the License Agreement. The upshot of this activity is Balboa gets a locked in payment regardless of Medstreaming's unfair or deceptive acts or practices. Plaintiffs have made payments under the Balboa Equipment Finance Agreement to Balboa. Plaintiffs have requested Balboa suspend the payments pending resolution of Plaintiffs' issues with Medstreaming. Balboa's response was to inform Plaintiffs that Balboa would enforce the personal guarantees of Plaintiffs' owners if payments were not made.

3.32    The Agreement, specifically the Software License Terms and Conditions, contains a termination provision. If Medstreaming breached the Agreement, Plaintiffs could, following thirty days' notice, terminate the agreement.

COMPLAINT - 10

CABLE, LANGENBACH,
KINERK & BAUER, LLP
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

3.33    On February 28, 2017, Plaintiffs notified Medstreaming in writing of defects and breaches and demanded that Medstreaming cure them. The letter made a demand to Medstreaming to cure its breach of the Software License Agreement and the Technical Assistance Services Agreement within 30 days from the date of the letter, pursuant to the terms of the Agreement.

3.34    Plaintiffs informed Medstreaming that the software was not ready to launch, and was incomplete and/or defective.  After the letter was sent, Plaintiffs and Medstreaming had several telephone conferences to try and resolve the material breaches. Those conferences were unsuccessful. The parties attempted for more than 30 days to resolve this dispute without success.

3.35    After Plaintiffs sent the letter and while the parties were working through the 30-day resolution process, Medstreaming cut off Plaintiffs' access to the software. On May 9, 2017, the parties had a telephone conference to address software issues. Earlier that day Plaintiffs had informed Medstreaming that access to the software had been terminated and therefore it was impossible to address deficiencies with Medstreaming.  Medstreaming's in-house counsel expressed confusion at Plaintiffs' request to be permitted access.  It was clear that Medstreaming cut off access and had no intention of allowing access because the hosting cost Medstreaming money.  On the telephone conference of the same date, Medstreaming's CEO, Wael Elseaidy, stated that it was his decision to cut off Plaintiffs' access to the software.

COMPLAINT - 11

CABLE, LANGENBACH,
KINERK & BAUER, LLP
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

3.36    At no time since Medstreaming was notified of its material breaches, has it complied with Section 4.2 of the Agreement.  In fact, although Medstreaming has taken away Plaintiffs' access to the software, Plaintiffs are forced to continue to pay Balboa.

3.37    Plaintiffs suffered damages as a direct and proximate cause of Medstreaming's breach of its contractual obligations, breach of express and implied warranties and violations of the Washington Consumer Protection Act. Likewise, Plaintiffs have suffered damages as a direct and proximate cause of Balboa's refusal to suspend or terminate payments based on Medstreaming's non-performance.

## IV.  CAUSES OF ACTION

### First Cause Of Action

### Recovery Of License Payments

4.1    Plaintiffs incorporate all previous allegations.

4.2    The Agreement includes the right to terminate in paragraph 4.2 of the Software License Terms and Conditions.

4.3    Plaintiffs notified Medstreaming in writing of material breaches and Medstreaming failed to cure them within thirty days.

4.4    The Agreement was terminated.

4.5    Plaintiffs are entitled to all license payments. In the alternative, Plaintiffs are entitled to recover the amount by which Defendants were unjustly enriched.

## V.  SECOND CAUSE OF ACTION

### Breach Of Contract – Revocation Or Rejection

5.1    Plaintiffs incorporate all previous paragraphs as if fully set forth herein.

COMPLAINT - 12

CABLE, LANGENBACH,
KINERK & BAUER, LLP
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

5.2     Plaintiffs and Medstreaming made a valid contract.

5.3     RCW 62A allows a buyer to reject goods that fail in any respect to conform to the contract.

5.4     RCW 62A states in pertinent part:

> The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it (a) on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; or (b) without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances. (3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.  RCW 62A.2-608.

5.5     RCW 62A also states in pertinent part:

> (1)  Where the...buyer rightfully rejects or justifiably revokes acceptance then with respect to any goods involved, and with respect to the whole if the breach goes to the whole contract the buyer may cancel and whether or not he has done so may in addition to recovering so much of the price as has been paid (b) recover damages for non-delivery as provided in this Article (RCW 62A.2-713). RCW 62A.2-711(1).

5.6     Plaintiffs contracted for the sale and purchase of custom software (the Licensed Program) which would provide services for its medical practice.

5.7     Medstreaming promised to deliver and install the Licensed Program at Customer's facility, but breached that promise. Software License Terms and Conditions, Paragraph 2.3.1.

5.8     Plaintiffs informed Medstreaming of the significant material defects of the Licensed Program within a reasonable time frame.

5.9     Medstreaming made numerous assurances that those defects could be and would be cured.

COMPLAINT - 13

CABLE, LANGENBACH,
KINERK & BAUER, LLP
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

5.10    Medstreaming continued to make assurances that the defects would be cured, and continued to make attempts to repair those defects.

5.11    Plaintiffs relied upon those assurances and trusted that Medstreaming would in fact cure the Licensed Program defects.

5.12    Therefore, because Medstreaming failed to tender conforming goods, and because Medstreaming has failed to cure the materially defective goods, Plaintiffs timely rejected and/or revoked acceptance and demanded rescission.

5.13    Plaintiffs demand reimbursement of all amounts paid for the Licensed Program to date, plus prejudgment interest.

5.14    Plaintiff's' demands are reasonable and should be granted where Medstreaming breached the Agreement with Plaintiffs by failing to provide conforming goods, and those breaches are a direct and proximate cause of Plaintiffs' damages.

5.15    The contract was breached by Medstreaming.

5.16    Plaintiffs performed their obligations under the contract.

5.17    Plaintiffs suffered damages as a consequence of Medstreaming's breaches. In the alternative, Plaintiffs are entitled to recover the amount by which Defendants were unjustly enriched.

## VI.  THIRD CAUSE OF ACTION

### Breach Of Contract: Breach Of Express Warranty

6.1    Plaintiffs incorporate all previous paragraphs as if fully set forth herein.

6.2    The February and March 2016 demonstrations of the software were a sample or model creating an express warranty. Medstreaming's product demonstration

COMPLAINT - 14

CABLE, LANGENBACH,
KINERK & BAUER, LLP
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

1    was made a basis of the bargain and thus constituted an express warranty pursuant to

2    RCW 62A.2-313(1). Medstreaming breached the express warranty created by the

3    product demonstration because the delivered Licensed Product did not perform as

4    warranted.

5        6.3    Medstreaming warranted that the services "provided hereunder shall be

6    performed in a professional and workmanlike manner by adequately trained and

7    experienced personnel." Technical Services Agreement, paragraph 3.2.  Medstreaming

8    breached the express warranty in Paragraph 3.2 because the services were not

9    performed in a professional or workmanlike manner by adequately trained and

10   experienced personnel.

11

12       6.4    The System Schedule included a Description of the software modules,

13   features, and functionality. The Description was made part of the basis of the bargain

14   and created an express warranty. RCW 62A.2-313(1)(b).

15       6.5    Plaintiffs performed their obligations under the Agreement.

16       6.6    Plaintiffs suffered direct damages as a consequence of Medstreaming's

17   breaches. In the alternative, Plaintiffs are entitled to recover the amount by which

18   Defendants were unjustly enriched.

19

20                  **VII.  FOURTH CAUSE OF ACTION**

                **Breach Of Contract: Breach Of Implied Warranties**
21              **Of Merchantability And Fitness For A Particular Purpose**

22       7.1    Plaintiffs incorporate all previous paragraphs as if fully set forth herein.

23

24

COMPLAINT - 15

CABLE, LANGENBACH,
KINERK & BAUER, LLP
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

7.2     The Agreement includes an implied warranty of merchantability that the Licensed Product was fit for the ordinary purpose for which it was purchased.

7.3     The Licensed Product did not perform the ordinary purposes of the software, including printing, nurses notes and production of CPT codes, contravening RCW 62A. 2-314.

7.4     The Agreement includes an implied warranty of fitness for a particular purpose.

7.5     Medstreaming knew of the particular purposes for which Plaintiffs purchased the Licensed Product.

7.6     Plaintiffs purchased the Licensed Product in reliance on Medstreaming's assurances and warranty that it could perform the particular purposes that Plaintiffs required.

7.7     The Software License attempts to disclaim various warranties. But the text of Paragraph 3.3 of the Software License uses the same font, same font size, and same color as the text in paragraphs 3.1 and 3.2 of the Software License. Hence, the disclaimer is ineffective.

7.8     The Licensed Product did not perform the particular purposes for which it was purchased. RCW 62A.2-315.

7.9     Medstreaming failed to disclaim the implied warranties.

7.10    Medstreaming breached the implied warranties.

COMPLAINT - 16

CABLE, LANGENBACH,
KINERK & BAUER, LLP
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

7.11    Plaintiffs have been damaged by Medstreaming's breach of the implied

warranties and are entitled to recover direct damages. In the alternative, Plaintiffs are

entitled to recover the amount by which Defendants were unjustly enriched.

## VIII.   FIFTH CAUSE OF ACTION

### Fraudulent Inducement

8.1    Plaintiffs incorporate all previous paragraphs.

8.2    Medstreaming represented that the Licensed Product would perform

structured reporting for numerous certain medical office procedures, including but not

limited to carotid angiograms, subclavian angiograms, and other cardiac procedures.

8.3    Medstreaming represented that the Licensed Product would be

operational within thirty days of gaining access to Plaintiffs' server to install the

Licensed Product.

8.4    Medstreaming performed a demonstration of its Licensed Product which

purported to show that the Product would serve Plaintiffs' needs.

8.5    Medstreaming's representations were material to Plaintiffs' decision to

purchase the Licensed Product and to enter into the Agreement.

8.6    Medstreaming's representations to Plaintiffs were false.

8.7    Medstreaming knew at the time it made the representations that they

were false or recklessly disregarded the truth of the representations.

8.8    Medstreaming intended that Plaintiffs rely on its false representations and

intended that those false representations induce the Plaintiffs to enter into the

Agreement.

COMPLAINT - 17

CABLE, LANGENBACH,
KINERK & BAUER, LLP
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

8.9    Plaintiffs were unaware of the falsity of Medstreaming's representations.

8.10    Plaintiffs reasonably and justifiably relied on Medstreaming's representations.

8.11    Plaintiffs have been damaged by Medstreaming's false representations, which induced it to enter into the Agreement. In the alternative, Plaintiffs are entitled to rescission.

## IX.  SIXTH CAUSE OF ACTION

### Consumer Protection Act

9.1    Plaintiffs incorporate all previous paragraphs.

9.2    The acts described in this Complaint were undertaken by Defendants in the course of Defendants' trade and/or in commerce, directly or indirectly affecting commerce in the State of Washington.

9.3    Defendants committed unfair and/ or deceptive acts and practices and violated the Washington State Consumer Protection Act, RCW 19.86.020, by making untrue representations, selling Plaintiffs a defective Licensed Program, breaching the warranties at issue, refusing to rescind the purchase and sales and finance agreement, and refusing to refund Plaintiffs' money when it became obvious that the Licensed Program would not perform to a reasonable standard. Defendants' acts offend public policy, were immoral, unethical, oppressive, and/or unscrupulous.

9.4    Defendants advertised the Licensed Programs to the medical profession, has sold Licensed Programs to other medical practices, and continues to sell Licensed

COMPLAINT - 18

CABLE, LANGENBACH,
KINERK & BAUER, LLP
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

Programs to other physicians and medical practices. In the course of these activities, Defendants have committed similarly unfair and deceptive acts and/or practices.

9.5    Defendants' acts are injurious to the public interest because Defendants' acts injured other persons, and/or have or had the capacity to injure other persons.

9.6    Defendants' unfair and/or deceptive acts or practices proximately caused injury to Plaintiffs' business and/ or property.

9.7    Each Plaintiff is entitled to recover actual damages, a trebling of those damages, and the costs (including attorney fees) of this lawsuit, including a reasonable attorney's fee.

9.8    Each Plaintiff is entitled to receive a preliminary and permanent injunction prohibiting Medstreaming from any further violations of the Consumer Protection Act. RCW 19.86.090.

## X.  SEVENTH CAUSE OF ACTION

### Negligent Participation Liability By Officer

10.1    Plaintiffs incorporate all previous paragraphs.

10.2    Wael Elseaidy is a manager, member, or the equivalent of an officer of Defendant Medstreaming.  Ryan Plasch is a manager, member, or the equivalent of an officer of Defendant Medstreaming.

10.3    In their capacities as a manager, member, or the equivalent of an officer of Defendant Medstreaming, Wael Elseaidy and Ryan Plasch negligently controlled and/or directed wrongful acts and/or omissions by Medstreaming employees,

COMPLAINT - 19

CABLE, LANGENBACH,
KINERK & BAUER, LLP
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

1 including, but not limited to, unfair acts or practices that violated Washington's

2 Consumer Protection Act.

3      10.4    Wael Elseaidy and/or Ryan Plasch negligently directed other

4 Medstreaming employees to commit the wrongful acts described in this Complaint with

5 knowledge of the nature of the acts.

6      10.5    Without direction from Wael Elseaidy and/or Ryan Plasch, the wrongful

7 acts would not have occurred.

8      10.6    As a result of Wael Elseaidy and/or Ryan Plasch's participation, Plaintiffs

9

10 have suffered damages.  Wael Elseaidy and/or Ryan Plasch are liable to Plaintiffs due

11 to their status as a manager, member, or equivalent of an officer and their participation

12 in Medstreaming's wrongful acts.

13 **XI.  PRAYER FOR RELIEF**

14 Plaintiffs pray for judgment as follows:

15      11.1    Damages in an amount to be determined, plus interest;

16      11.2    Recovery of the amount by which Defendants have been unjustly

17 enriched;

18      11.3    Exemplary damages pursuant to RCW 19.86;

19      11.4    Costs of suit, including attorneys' fees pursuant to RCW 19.86;

20      11.5    A preliminary and permanent injunction prohibiting Defendants from

21 further violations of the Consumer Protection Act; and

22      11.6    For such other and further relief as the Court deems just and equitable

23

24 under the circumstances.

COMPLAINT - 20

CABLE, LANGENBACH,
KINERK & BAUER, LLP
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

Respectfully submitted this 3rd day of August, 2017.

CABLE LANGENBACH KINERK & BAUER LLP

_s/ Lawrence R. Cock_
Lawrence R. Cock, WSBA No. 20326
Attorney for Plaintiffs
CABLE, LANGENBACH, KINERK & BAUER, LLP
Suite 3500, 1000 Second Avenue Building
Seattle, Washington 98104-1048
(206) 292-8800 phone
(206) 292-0494 facsimile
lrc@cablelang.com


BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC

_s/ Lawrence R. Cock for Lori Hood per authorization_
Lori Hood (Texas BRP #009943430)
Attorney for Plaintiffs
1301 McKinney Street, Suite 3700
Houston, TX 77010
Tel: (713) 650-9700
Fax: (713) 650-9701
lhood@bakerdonelson.com

_Application for pro hac vice pending_

COMPLAINT - 21

CABLE, LANGENBACH,
KINERK & BAUER, LLP
1000 SECOND AVENUE, SUITE 3500
SEATTLE, WASHINGTON 98104-1048
(206) 292-8800

1

<u>**CERTIFICATE OF SERVICE**</u>

2      The undersigned certifies that on August 3, 2017, I served the foregoing

3 document on the following party via messenger:

4      Washington State Attorney General
       Consumer Protection Division
5      800 Fifth Avenue, Suite 2000
       Seattle, WA  98104-3188
6

7      I declare under penalty of perjury under the laws of the state of Washington, that

8 the foregoing is true and correct.

9      Executed at Seattle, Washington on August 3, 2017.

10

11                    <u>s/ Christine F. Zea</u>
                      Legal Assistant

12

13

14

15

16

17

18

19

20

21

22

23

24

COMPLAINT - 22

FILED

17 OCT 02 AM 11:09

The Honorable Catherine Moore
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 17-2-20623-7 SEA

1
2
3
4
5
6
7

SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

8   NIRP PASADENA, PLLC; and NIRP SUGAR
    LAND, PLLC,
9                                              No. 17-2-20623-7 SEA

                    Plaintiffs,               DEFENDANTS' ANSWER AND
10                                             AFFIRMATIVE DEFENSES
11          v.

12   MEDSTREAMING, LLC; WAEL ELSEAIDY;
     and RYAN PLASCH,
13
                    Defendants.
14

15          Defendants Medstreaming, LLC, Wael Elseaidy, and Ryan Plasch ("Defendants")

16   answer Plaintiffs' complaint, through their undersigned counsel, as follows:

                                    I.   **PARTIES**
17

18          1.1     Defendants lack sufficient information or knowledge to admit or deny the

19   allegations in paragraph 1.1 and thus deny the same.

            1.2     Defendants admit the allegations in paragraph 1.2.
20

21          1.3     Defendants admit that Wael Elseaidy is the Chief Executive Officer of

22   Medstreaming and that he is a resident of King County.  Defendants aver that, as a Chief

     Executive Officer, Mr. Elseaidy has been quoted in certain Medstreaming materials, but
23
     lack sufficient information or knowledge to admit or deny the accuracy of the quotations to
24
     which Plaintiffs refer.  Unless expressly admitted, the allegations are denied.
25

26

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES – Page 1

SPIRO HARRISON
500 UNION STREET, SUITE 800
SEATTLE, WASHINGTON 98101
PHONE: 206.899.1998

EXHIBIT C

1.4   Defendants admit that Ryan Plasch holds the title of Vice President of Medstreaming and is responsible for sales and strategic business development.  Defendants further admit that Mr. Plasch helps lead a sales and business development team and is a resident of King County.  To the extent not expressly admitted, the allegations are denied.

1.5   Defendants aver that Medstreaming entered into a contractual relationship with NIRP Pasadena PLLC in or around 2016.  The so-called "Agreement," as defined in Section 1.5, speaks for itself and no further response is required.  Unless expressly admitted or averred to, the allegations are denied.

1.6   The Software License Agreement Terms and Conditions speak for themselves and no response is required.

## II.   VENUE AND JURISDICTION

2.1   This paragraph sets forth Plaintiffs' jurisdictional allegations that present legal conclusions and questions of law to be determined solely by the Court, to which no answer is required.  To the extent a response is required, Defendants admit the allegations in this paragraph.

2.2   This paragraph sets forth Plaintiff's jurisdictional allegations that present legal conclusions and questions of law to be determined solely by the Court, to which no answer is required. To the extent a response is required, Defendants lack sufficient information or knowledge to admit or deny the allegations in this paragraph and thus deny the same.

2.3   This paragraph sets forth Plaintiff's venue allegations that present legal conclusions and questions of law to be determined solely by the Court, to which no answer is required.  To the extent a response is required, the Software License Agreement Terms and Conditions speaks for itself, but specifically contemplates venue in state or federal court.

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES – Page 2

SPIRO HARRISON
500 UNION STREET, SUITE 800
SEATTLE, WASHINGTON 98101
PHONE: 206.899.1996

## III.   FACTS

3.1     Defendants aver that it is their understanding that Plaintiffs provide certain radiology medical services to patients, but lack sufficient information or knowledge to admit or deny the substance of the allegations in this paragraph and thus deny the same.

3.2     Defendants generally lack sufficient information or knowledge to admit or deny the allegations in this paragraph and thus deny the same.  Moreover, the allegations are vague and confusing, including with respect to the first sentence ("The procedure necessarily requires state of the art technology and training").  Moreover, the allegations in paragraph 3.2 assert opinions for which, to the extent relevant, expert analysis may be necessary.  Thus, the allegations do not generally lend themselves to an admit or deny.  To the extent a response is required, the allegations are denied.

3.3     Defendants admit that Medstreaming develops, markets, sells, installs, and supports specialty-based workflow applications to medical providers for different medical specialties, including Cardiovascular, Vascular, and Cardiology.

3.4     With respect to the first and second sentences, Medstreaming's website speaks for itself and no response is required.  Nevertheless, Defendants generally admit that the quotes attributed to the website exist along with other contextual language and information.  With respect to the third, fourth, and fifth sentences, Defendants admit that Wael Elseaidy is quoted in certain Medstreaming's press releases and aver that the quotes attributed to him speak for themselves along with other contextual language and information.  To the extent that a response is required, Defendants specifically deny any insinuation that the so-called "representations" based on the website or any quotes attributed to Mr. Elseaidy were false or give rise to any actionable claims.

3.5     With respect to the first sentence, Defendants admit that Ryan Plasch attended a symposium in Hollywood, Florida, in or early February 2016, as part of business development for Medstreaming.  With respect to the second sentence, Defendants admit

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES – Page 3

SPIRO HARRISON
500 UNION STREET, SUITE 800
SEATTLE, WASHINGTON 98101
PHONE: 206.899.1996

that Mr. Plasch and Maged Mikhail met with a NIRP physician during the symposium to discuss and demonstrate Medstreaming's software, but lack information or knowledge at this time as to the identity of that physician or the exact duration of the meeting(s). Defendants deny that Medstreaming made any false promises during that meeting.

3.6     Defendants admit the first and second sentences.  With respect to the third sentence, Defendants admit that, as demonstrated, Medstreaming's software included capabilities for PACS reporting, the information systems and clinical data management, and further aver that those capabilities were subject to certain customization for individual customers.  To the extent not expressly admitted, the allegations are denied.  Defendants specifically deny any insinuation that any so-called "representations" were false or give rise to any actionable claims.

3.7     Defendants admit the first sentence insofar as that, as demonstrated, Medstreaming's product would perform autocoding of CPT codes and that the product would generally integrate with NIRP's systems.  The specific phrase "integrate seamlessly with peripherals" is vague and confusing.  To the extent not expressly admitted, the allegations are denied.  With respect the second and third (in paren) sentences, Defendants admit that Medstreaming has developed a "All in One" platform application and that NIRP ultimately obtained the Medstreaming All in One OBL Cardiovascular Infomatics System. The quote attributed to Mr. Elseaidy in the third sentence speaks for itself along with other contextual language and information.  cThe specific phrase "would integrate with Plaintiffs' EMR reporting system" is vague and confusing.  Defendants deny the final sentence. Defendants further specifically deny any insinuation that so-called "representations" were false or give rise to any actionable claims.

3.8     The allegations in this paragraph are vague and confusing and lack the specificity necessary for a response, including the specific "all of the Plaintiffs' administrative software needs" that Plaintiffs claim they had and the specific

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES – Page 4

SPIRO HARRISON
500 UNION STREET, SUITE 800
SEATTLE, WASHINGTON 98101
PHONE  206.899.1996

communications involving the same.  Notwithstanding the foregoing, Defendants aver that, in addition to the presentation on or about February 16, 2016, Mr. Mazzola, Mr. Plasch, and/or Mr. Mikhail had other interactions with NIRP, including demonstrations, concerning the software. To the extent not expressly admitted or averred to, the allegations are denied. Defendants specifically deny any insinuation any so-called "representations" were false or give rise to any actionable claims.

        3.9     The first sentence of this paragraph is vague and confusing with respect to the phrase "fully functional, ready for installation and would provide the Services." Likewise, the second sentence is vague and confusing generally, including specifically with respect to the phrase "assured Plaintiffs that its software would provide."  Specifically, with respect to the first and second sentences, it is unclear whether and to what extent Plaintiffs are alleging any specific oral or written representations or promises and the timing of those alleged representations or promises, if any.  Notwithstanding the foregoing, Defendants aver that its software has the capability to provide information templates for medical procedures.  To the extent not expressly admitted or averred to, the allegations are denied. Defendants specifically deny the allegation in the final sentence that "[t]hose promises were false" or any insinuation that any so-called "representations" give rise to any actionable claims.

        3.10    The allegations in this paragraph lack the specificity necessary for a response, including specifically with respect to the phrases "[i]n conjunction with the Agreement," and "Medstreaming represented."  With respect to the second sentence, the quote attributed to Mr. Elseaidy speaks for itself along with other contextual language and information.  According, Defendants lack sufficient information or knowledge to admit or deny the allegations in this paragraph and thus deny the same.  Defendants specifically deny the allegation in the final sentence that "[t]hose promises were false" or any insinuation that any so-called "representations" give rise to any actionable claims.

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES – Page 5

SPIRO HARRISON
500 UNION STREET, SUITE 800
SEATTLE, WASHINGTON 98101
PHONE: 206.899.1995

3.11    Defendants lack sufficient information or knowledge to admit or deny the allegations in this paragraph and thus deny the same.

3.12    The allegations in this paragraph are vague and confusing as to the quoted language insofar as it fails to attribute the source. Defendants lack sufficient information or knowledge to admit or deny the allegations in paragraph 3.12 and thus deny the same.

3.13    Defendants aver that Medstreaming would (and did) install the software as represented, but otherwise deny the allegations in this paragraph as characterized.

3.14    Defendants deny the allegations in this paragraph.

3.15    Defendants lack sufficient information or knowledge to admit or deny the allegations in this paragraph and thus deny the same.

3.16    Defendants lack sufficient information or knowledge to admit or deny the allegations in this paragraph and thus deny the same.

3.17    The first sentence of this paragraph is vague and confusing generally and specifically with respect to the phrases "structured reporting" and "does not create the correct text." Defendants lack sufficient information or knowledge to admit or deny the allegations in the second sentence and thus deny the same.  With respect to the third sentence, Defendants deny the allegations that any so-called "representations" have "proven to be false." The fourth sentence is again vague and confusing with respect to the phrase "structured reporting." Notwithstanding the forgoing, Defendants deny the allegations in the fourth sentence.  Defendants deny the allegations in the fifth and final sentence.

3.18    Defendants lack sufficient information or knowledge to admit or deny the allegations in this paragraph and thus deny the same.  Defendants specifically deny that any of the allegations in this paragraph give rise to actionable claims.

3.19    Defendants deny the allegations in this paragraph.

3.20    Defendants deny the allegations in this paragraph as characterized.

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES – Page 6

SPIRO HARRISON
500 UNION STREET, SUITE 800
SEATTLE, WASHINGTON 98101
PHONE: 206.899.1996

3.21    The first sentence of this paragraph is vague and confusing insofar as it fails to specify what exactly was allegedly represented. In addition to, and notwithstanding the foregoing, Defendants deny the allegations as characterized in this paragraph. Defendants specifically deny that any of the allegations in this paragraph, including any insinuation arising from so-called "representations," give rise to actionable claims.

3.22    With respect to the first and second sentences of this paragraph, Defendants aver that NIRP created videos to allege that basic functions were not being performed, but deny the remaining allegations as characterized. NIRP failed to cooperate with Medstreaming's efforts. Moreover, the second sentence of paragraph 3.22 is vague and confusing with respect to the quoted language and to which no response is required. With respect to the third sentence, Defendants lack sufficient information or knowledge to admit or deny the allegations and thus deny the same. Defendants deny the fourth and final sentence.

3.23    Defendants deny the allegations in this paragraph.

3.24    With respect to the allegations in this paragraph, the referenced "Agreement" speaks for itself and to which no response is required.

3.25    Defendants deny the allegations in this paragraph.

3.26    Defendants deny the allegations in this paragraph.

3.27    Defendants deny the allegations in this paragraph.

3.28    Defendants deny the allegations in this paragraph.

3.29    Defendants deny the allegations in this paragraph.

3.30    Defendants deny the allegations in this paragraph.

3.31    Defendants deny the first sentence of paragraph 3.31. Defendants deny the second sentence as characterized. With respect to the third sentence, the term "relationship" is vague and confusing and thus no response is required. To the extent a response is required, Defendants deny the allegations in the third sentence. With respect to

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES – Page 7

SPIRO HARRISON
500 UNION STREET, SUITE 800
SEATTLE, WASHINGTON 98101
PHONE: 206.899.1996

the fourth sentence, the License Agreement and any agreements concerning Balboa speak for themselves and no response is required.  To the extent a response is required, Defendants aver that, pursuant to an agreement between NIRP and Balboa, NIRP borrowed monies from Balboa, and entered into payment arrangement with Balboa, for the purpose of obtaining the Medstreaming software.  To the extent not expressly admitted or averred to, the allegations in the fourth sentence is denied.  With respect to the fifth and sixth sentences, the allegations are directed at non-party Balboa and thus no response is required. Moreover, the agreement between Balboa and NIRP speak for itself and to which no response is required.  To the extent a response is required, Defendants deny the allegations. With respect to the remaining allegations (seventh, eighth, and ninth sentences), Defendants lack sufficient information or knowledge to admit or deny the allegations and thus deny the same.

3.32    With respect to the allegations in this paragraph, the Agreement speaks for itself and no response is required.  Notwithstanding the foregoing, Defendants aver that the Agreement contains provisions for terminating the Agreement upon material breach and failure to cure the breach within a thirty-day period.

3.33    With respect to the first sentence of this paragraph, Defendants admit that Medstreaming received a letter from NIRP's counsel on or about February 28, 2017, which speaks for itself.  To the extent not expressly admitted, the allegations are denied.

3.34    With respect to the first and second sentences of this paragraph, Defendants aver that NIRP informed Medstreaming of certain alleged defects and that Medstreaming and NIRP had several telephone calls in the aftermath. To the extent not expressly admitted or averred to, the allegations are denied.  With respect to the third sentence of this paragraph, Defendants admit that the conferences were unsuccessful in no small part due to NIRP's inconsistent intentions and directions concerning the software and overall lack of

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES – Page 8

cooperation from NIRP, namely Andrew Gomes, M.D., the Chief Executive Officer of NIRP. Defendants admit the fourth and final sentence of paragraph 3.34.

3.35 Defendants deny the allegations in the first sentence. With respect to the second and third sentences, Defendants deny the allegations as characterized. Specifically, by May 9, 2017, NIRP had already terminated the relationship with Medstreaming. With respect to the fourth sentence, Defendants deny the allegations in the fourth sentence as characterized. Defendants deny the remaining allegations.

3.36 Defendants deny the allegation in the first sentence. With respect to the second sentence, the allegation is directed at non-party Balboa to which no response is required. Unless expressly admitted, the allegations are denied.

3.37 Defendants deny the allegations in paragraph 3.37.

## IV. FIRST CAUSE OF ACTION

### Recovery of License Payments

4.1 Defendants incorporate by reference the contents of Sections I-III above.

4.2 Defendants aver that the Software License Terms and Conditions speaks for itself and no response is required.

4.3 Defendants aver that NIRP notified Medstreaming about alleged so-called breaches, but deny the remaining allegations.

4.4 The allegation in this paragraph contains a legal conclusion to which no response is required. To the extent a response is required, Defendants aver that NIRP terminated the agreement.

4.5 Defendants deny the allegations in this paragraph.

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES – Page 9

SPIRO HARRISON
500 UNION STREET, SUITE 800
SEATTLE, WASHINGTON 98101
PHONE. 206.699.1996

## V. SECOND CAUSE OF ACTION

### Breach of Contract – Revocation or Rejection

5.1     Defendants incorporate by reference the contents of Sections I-IV above.

5.2     The allegation in this paragraph contains a legal conclusion to which no response is required.  Notwithstanding the foregoing, Defendants aver that Medstreaming and NIRP Pasadena PLLC entered into a contract.

5.3     The allegation in this paragraph references RCW 62A or otherwise contains a legal conclusion to which no response is required.

5.4     The allegation in this paragraph purportedly recites RCW 62A.2-608.  The statute speaks for itself and no response is required.

5.5     The allegation in this paragraph purportedly recites RCW 62A.2-713 and RCW 62A.2-711(1).  The statute speaks for itself and no response is required.

5.6     Defendants aver that Medstreaming and NIRP Pasadena PLLC entered into a Software Licensing Agreement concerning a medical practice.  To the extent not expressly admitted or averred to, the allegation is denied.

5.7     Defendants deny the allegations in this paragraph.

5.8     The allegations in this paragraph contain a legal conclusion to which no response is required.  To the extent the allegation contains factual allegations, Defendants deny the allegations.

5.9     The allegation in this paragraph lacks the specificity necessary for a response, including failing to specify the defects and the specific assurances that Medstreaming allegedly made concerning the defects.  Thus, no response is required.  To the extent a response is required, Defendants aver that Medstreaming attempted to work with NIRP, but deny the allegation as characterized.

5.10    The allegation in this paragraph lacks the specificity necessary for a response, including failing to specify the defects and the specific assurances that

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES – Page 10

SPIRO HARRISON
500 UNION STREET, SUITE 800
SEATTLE, WASHINGTON 98101
PHONE: 206.899.1996

Medstreaming allegedly made.  Thus, no response is required.  Notwithstanding the above, Defendants aver that Medstreaming made various attempts to work with NIRP to address their concerns about the software, but deny the allegations as characterized.

5.11    Defendants lack sufficient information or knowledge to admit or deny the allegation and thus deny the same.

5.12    Defendants deny the allegation in this paragraph.

5.13    The allegations in this paragraph includes a request for relief to which no response is required.  Nevertheless, Defendants deny that Plaintiffs are entitled to reimbursement.

5.14    Defendants deny the allegations in this paragraph.

5.15    Defendants deny the allegations in this paragraph.

5.16    Defendants deny the allegations in this paragraph.

5.17    Defendants deny the allegations in this paragraph.

## VI. THIRD CAUSE OF ACTION

### Breach of Contract – Breach of Express Warranty

6.1    Defendants incorporate by reference the contents of Sections I-V above.

6.2    The allegations in this paragraph constitute legal conclusions to which no response is required.  To the extent the allegation incorporates factual allegations, Defendants deny the allegations.

6.3    With respect to the first sentence of this paragraph, the Technical Services Agreement, as referenced, speaks for itself and no response is required.  Defendants deny the second sentence.

6.4    With respect to the first sentence of this paragraph, the System Schedule speaks for itself and no response is required.  With respect to the second sentence of paragraph 6.4, the allegations constitute legal conclusions to which no response.  To the extent the allegations incorporate factual allegations, Defendants deny the allegations.

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES – Page 11

SPIRO HARRISON
500 UNION STREET, SUITE 800
SEATTLE, WASHINGTON 98101
PHONE: 206.899.1996

6.5   Defendants deny the allegations in this paragraph.

6.6   Defendants deny the allegations in this paragraph.

## VII.   FOURTH CAUSE OF ACTION

### Breach of Contract: Breach of Implied Warranties of Merchantability and Fitness for a Particular Purpose

7.1   Defendants incorporate by reference the contents of Sections I-VI above.

7.2   The allegations in this paragraph constitute legal conclusions to which no response is required.  To the extent the allegations incorporate factual allegations, Defendants deny the allegations.

7.3   Defendants deny the allegations in this paragraph.

7.4   The allegations in this paragraph constitute legal conclusions to which no response is required.  To the extent the allegations incorporate factual allegations, Defendants deny the allegations.

7.5   Defendants deny the allegations in this paragraph.

7.6   Defendants deny the allegations in this paragraph.

7.7   The allegations in this paragraph constitute legal conclusions to which no response is required.  To the extent the allegations incorporate factual allegations, Defendants deny the allegations.

7.8   Defendants deny the allegations in this paragraph.

7.9   Defendants deny the allegations in this paragraph.

7.10   Defendants deny the allegations in this paragraph.

7.11   Defendants deny the allegations in this paragraph.

## VIII.   FIFTH CAUSE OF ACTION

### Fraudulent Inducement

8.1   Defendants incorporate by reference the contents of Sections I-VII above.

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES – Page 12

8.2     Defendants incorporate by reference the contents of Section III above. Notwithstanding the forgoing, Defendants aver that the software would (and did) provide certain reporting for certain medical office procedures.  Specifically, the software performed in all manners as represented.

8.3     Defendants incorporate by reference the contents of Section III above. Notwithstanding the foregoing, the term "operational" is vague and confusing. Nevertheless, Defendants aver that the software would be (and was) operational in all manners represented.

8.4     Defendants incorporate by reference the contents of Section III above. Notwithstanding the forgoing, the term "Plaintiffs' needs" is vague and confusing insofar as it fails to specify which needs NIRP had that Medstreaming's demonstration purportedly showed.  Nevertheless, Defendants aver that Medstreaming performed a demonstration of the product and delivered the product in the manner represented.

8.5     Defendants deny the allegations in this paragraph.

8.6     Defendants deny the allegations in this paragraph.

8.7     Defendants deny the allegations in this paragraph.

8.8     Defendants deny the allegations in this paragraph.

8.9     Defendants deny the allegations in this paragraph.

8.10    Defendants deny the allegations in this paragraph.

8.11    Defendants deny the allegations in this paragraph.

## IX.     SIXTH CAUSE OF ACTION

### Customer Protection Act

9.1     Defendants incorporate by reference the contents of Sections I-VIII above.

9.2     The allegations in this paragraph contain legal conclusions to which no response is required.  To the extent the allegation incorporates factual allegations, Defendants deny the allegations.

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES – Page 13

SPIRO HARRISON
500 UNION STREET, SUITE 800
SEATTLE, WASHINGTON 98101
PHONE: 206.899.1996

9.3     Defendants deny the allegations in this paragraph.

9.4     With respect to the first sentence of this paragraph, Defendants aver that Medstreaming is in the business of developing and selling specialty-based workflow applications software to medical providers. Defendants deny the second sentence.

9.5     Defendants deny the allegations in this paragraph.

9.6     Defendants deny the allegations in this paragraph.

9.7     Defendants deny the allegations in this paragraph.

9.8     Defendants deny the allegations in this paragraph.

## X.     SEVENTH CAUSE OF ACTION

### Negligent Participation Liability by Officer

10.1     Defendants incorporate by reference the contents of Sections I-IX above.

10.2     The allegations in this paragraph constitute legal conclusions to which no response is required.  To the extent the allegations incorporate factual allegations, Defendants aver that Wael Elseaidy is the Chief Executive Officer of Medstreaming and Ryan Plasch holds the title of Vice President of Medstreaming and is responsible for sales and strategic business development.   10.3     Defendants deny the allegations in this paragraph.

10.4     Defendants deny the allegations in this paragraph.

10.5     Defendants deny the allegations in this paragraph.

10.6     Defendants deny the allegations in this paragraph.

## XI.     PRAYER FOR RELIEF

The remainder of Plaintiffs' Complaint consists of a prayer for relief to which no responsive pleading is required.  Defendants, individually and collectively, deny that they acted wrongfully or illegally toward Plaintiffs and further denies that Plaintiffs are entitled to any relief, neither on legal nor equitable grounds.

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES – Page 14

SPIRO HARRISON
500 UNION STREET, SUITE 800
SEATTLE, WASHINGTON 98101
PHONE: 206.899.1996

## XII.   AFFIRMATIVE AND OTHER DEFENSES

By way of other answers and affirmative defenses, Defendants further assert as follows:

1.  Plaintiffs have failed to state a claim upon which relief may be granted.

2.  Plaintiffs have failed to establish jurisdiction, including subject matter jurisdiction.

3.  Plaintiffs have failed to mitigate damages, if any, and too protect themselves from avoidable consequences.

4.  Plaintiffs unreasonably failed to take advantage of any preventive or corrective opportunities provided by Medstreaming or to avoid harm otherwise.

5.  Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver, estoppel and unclean hands.

6.  If any loss, injury, damage, or detriment occurred as alleged in the Complaint (which it did not), the loss injury, damage or detriment was caused and aggravated by the action (or inaction) of Plaintiffs.  Plaintiffs' recovery, if any, should be reduced in proportion to the percentage of Plaintiffs' negligence or fault.

7.  Plaintiffs' claims for any damages, even if recoverable (which they are not), are set off against any loss, damage or injury that Plaintiff caused to Defendants.

8.  Plaintiff's claims are barred, in whole or in part, to the extent Plaintiff seeks duplicative relief for the same alleged acts, omissions and/or injuries.

9.  Plaintiffs have failed to join necessary parties.

**Defendants reserve the right to amend their Answer to state additional affirmative or other defenses as may become known in discovery.**

## XIII.   COUNTERCLAIMS

Defendants reserve their right to assert counterclaims in this or other action arising from Plaintiffs' or one or more of their agents' conduct in connection with this dispute.

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES – Page 15

SPIRO HARRISON
500 UNION STREET, SUITE 800
SEATTLE, WASHINGTON 98101
PHONE  206.889.1996

## XIV.   DEFENDANTS' PRAYER FOR RELIEF

Wherefore, having answered all of the allegations of the Complaint, Defendants pray as follows:

1.   That the Complaint against Defendants be dismissed with prejudice;

2.   That all attorney fees and costs be assessed against Plaintiffs;

3.   That the Court grant such further relief as it deems just and proper.

DATED:  October 2, 2017

**SPIRO HARRISON**

By _s/ Hozaifa Y. Cassubhai_
   Hozaifa Y. Cassubhai, WSBA No. 39512

   *Attorneys for Defendants Medstreaming*
   *LLC, Wael Elseaidy, and Ryan Plasch*

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES – Page 16

## CERTIFICATE OF SERVICE

On October 2, 2017, I caused to be served a true and correct copy of the foregoing document upon counsel of record, at the address stated below, via the method of service indicated:

| Lawrence R. Cock, WSBA No. 20326 | ☐ | Via Messenger |
|---|---|---|
| Cable Langenbach Kinerk & Bauer LLP | ☑ | Via U.S. Mail |
| 1000 Second Avenue Building, Suite 3500 | ☐ | Via Overnight Delivery |
| Seattle, Washington 98104-1048 | ☐ | Via Facsimile |
| Phone: (206) 292-8800 | ☑ | Via E-mail |
| Fax:   (206) 292-0494 | | |
| Email:   lrc@cablelang.com | | |

*Attorney for Plaintiffs*

| Lori Hood (Texas BRP #009943430) | ☐ | Via Messenger |
|---|---|---|
| Baker Donelson Bearman Caldwell & | ☑ | Via U.S. Mail |
| Berkowitz, PC | ☐ | Via Overnight Delivery |
| 1301 McKinney Street, Suite 3700 | ☐ | Via Facsimile |
| Houston, TX 77010 | ☑ | Via E-mail |
| Phone: (713) 650-9700 | | |
| Fax:   (713) 650-9701 | | |
| Email: lhood@bakerdonelson.com | | |

*Attorney for Plaintiffs*

I declare under penalty of perjury under the laws of the United States of America and the State of Washington that the foregoing is true and correct.

DATED this 2nd day of October, 2017, in Short Hills, New Jersey.

/s *Hozaifa Y. Cassubhai*
Hozaifa Y. Cassubhai, Esq.

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES – Page 17

SPIRO HARRISON
500 UNION STREET, SUITE 800
SEATTLE, WASHINGTON 98101
PHONE: 206.899.1996